UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

FLOYD RAGSDALE,

                         Plaintiff,

v.                                                Civil Action No. 3:12–CV–404

MICHAEL J. ASTRUE,
    Commissioner of Social Security,

                         Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Floyd Ragsdale's Objections (ECF No. 13) to Magistrate Judge Novak's Report and Recommendation ("R&R") (ECF No. 12), affirming the Social Security Administration's denial of Plaintiff's application for Social Security Disability ("DIB"). The Commissioner of the Social Security Administration's ("Commissioner") decision to deny benefits consisted of a finding by an Administrative Law Judge ("ALJ") who determined that Ragsdale is not disabled according to the Social Security Act and applicable regulations. For the reasons stated below, the Court will OVERRULE Ragsdale's objections and ADOPT Judge Novak's R&R, which DENIES Ragsdale's Motion for Summary Judgment or Remand (ECF Nos. 7 & 8); GRANTS the Commissioner's Motion for Summary Judgment (ECF No. 10); and AFFIRMS the Commissioner's decision denying benefits to Ragsdale.

## BACKGROUND

"'Disability' is the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006) (quoting 42 U.S.C. § 423(d)(1)(A)). The Commissioner, through the Appeals Council or an ALJ, utilizes a five-step

sequential process to determine whether a claimant is disabled and thus eligible for Social Security disability benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. Under the five-step sequential inquiry, the Commissioner considers whether the claimant (1) is performing "substantial gainful activity;" (2) is severely impaired; (3) has an impairment that is at least as severe as one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could continue performing work that he did in the past; and (5) could perform any other job in the national economy. 20 C.F.R. §§ 416.905, 416.920; *see also Rogers v. Barnhart*, 216 F. App'x 345, 347-48 (4th Cir. 2007). If, at any step of the analysis, the Commissioner is able to determine that the applicant is disabled, or not disabled, the inquiry must stop. 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner if the analysis reaches step five. *Bowen v. Yuckett*, 482 U.S. 137, 146 n.5 (1987).

Before considering step four of the sequential analysis, the Commissioner must determine the claimant's residual functioning capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is a measurement of the most a claimant can do despite his limitations." *Hines*, 453 F.3d at 562. It is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* (quoting Social Security Ruling ("SSR") 96-8p) (emphasis omitted); *see also* SSR 96–9p.

On January 16, 2009, Ragsdale protectively filed an application for a period of disability and disability insurance benefits, alleging a disability beginning on October 3, 2008. R. at 12. Ragsdale's claim was denied initially on May 22, 2009, and upon reconsideration on October 29, 2009. R. at 12. Ragsdale filed a request for a hearing before an ALJ, which was held on June 18, 2010. The ALJ conducted the five-step sequential analysis and found Ragsdale is not disabled under the Social Security Act. R. at 14–19. At step one of the analysis, the ALJ found Ragsdale had not been engaged in substantial gainful activity since the alleged onset of the disability,

October 3, 2008. R. at 14. Addressing step two, the ALJ found Ragsdale suffered from severe impairments of non-insulin dependent diabetes mellitus, hypertension, and status-post left toe amputation. R. at 14. At step three of the analysis, the ALJ found Ragsdale does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 15.

Reviewing the entire record prior to considering step four, the ALJ found Ragsdale had an RFC "to perform light work as defined in 20 CFR 404.1567(b) except he is limited to occasional climbing. Due to his impairments, he must avoid concentrated exposure to heat, cold and wetness." R. at 16. When considering Ragsdale's symptoms at step four, the ALJ followed a two-step process to determine Plaintiff's credibility when describing his symptoms. R. at 16. The ALJ found Ragsdale's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the" RFC assessment. R. at 17. When considering the medical opinions at step four, the ALJ considered treating physician Dr. Puster's opinion, but gave it

> no weight because it is not consistent with the claimant's testimony and statements regarding his actual activity level and his own treatment notes. In addition, the claimant assisted in the completion of Dr. Puster's assessment of the limitations that does not appear to have been based on diagnostic and clinical findings but the claimant's subjective complaints.

R. at 18. At the conclusion of step four, the ALJ found Ragsdale "is capable of performing past relevant work as a maintenance coordinator. This work does not require the performance of work related activities precluded by" Ragsdale's RFC. R. at 18. The ALJ therefore concluded Ragsdale "has not been under a disability, as defined in the Social Security Act, from October 3, 2008, through the date of this decision." R. at 19. Ragsdale appealed the ALJ's decision and submitted a new report by an examining physician, Dr. Lee, to the Appeals Council. The Appeals Council denied Ragsdale's request for review and found the new evidence submitted "does not provide a basis for changing the [ALJ's] decision," R. at 1–2, thus the ALJ determination was the

final act and decision of the Commissioner.

Ragsdale appealed the ALJ's determination to this Court, alleging (1) the ALJ failed to follow the treating physician rule by assigning no weight to Dr. Puster's opinion, (2) the ALJ failed to consider Ragsdale's obesity when conducting the five step evaluation, (3) the ALJ failed to properly evaluate Ragsdale's credibility, and (4) remand is required based on new and material evidence submitted to the Appeals Council. Magistrate Judge Novak found that: (1) the ALJ did not err in assigning the opinions of Ragsdale's treating physician less than controlling weight, (2) the ALJ did not err when assessing Ragsdale's credibility, (3) the ALJ did not err in not addressing Ragsdale's obesity, and (4) the Appeals Council did not err when it refused to review the ALJ's decision once it received new evidence. R&R 21–30. The R&R agrees with the Commissioner's determination and recommends the Court DENY Ragsdale's Motion for Summary Judgment or Remand, GRANT the Commissioner's Motion for Summary Judgment, and AFFIRM the final decision of the Commissioner. Ragsdale now objects to the R&R, alleging (1) the ALJ failed to follow the treating physician rule, (2) the ALJ failed to properly consider Ragsdale's obesity, (3) the ALJ failed to properly evaluate Ragsdale's credibility, and (4) new evidence submitted to the Appeals Council warrants remand.

## STANDARD OF REVIEW

The Court may review a denial of benefits by the Commissioner, 42 U.S.C. § 405(g), but it must accept the Commissioner's findings of fact if they are supported by substantial evidence and were reached by applying the correct legal standard. *Hines*, 453 F.3d at 561. The "substantial evidence" standard is more demanding than the "scintilla" standard, but less demanding than the "preponderance" standard. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2011). Thus, a finding is supported by "substantial evidence" if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's

decision. *Id.* In determining whether a decision satisfies that standard, the Court may not weigh conflicting evidence, evaluate the credibility of evidence, or substitute its judgment for the Commissioner's findings. *Mastro*, 270 F.3d at 176.

A court reviews any portion of a Magistrate Judge's report and recommendation that has been properly objected to *de novo*. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). In order to properly object, a party must object "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007).

## ANALYSIS

### I. Judge Novak properly determined the ALJ did not err in assigning the opinions of Plaintiff's treating physician less than controlling weight

Plaintiff objects to Judge Novak's recommendation, claiming the ALJ failed to follow the "treating physician rule." Pl.'s Obj. to Report and Recomm. of Mag. J. 2 [hereinafter "Pl.'s Obj."]. ALJs must give a treating source's opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). However, "[a] statement by a medical source that [a patient is] 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that [the patient] is disabled." 20 C.F.R. § 404.1527(d)(1). If a physician's opinion is not supported by medical evidence or is inconsistent with other evidence, "it should be accorded significantly less weight." *Craig* at 590. The ALJ has final responsibility for deciding an individual's RFC and making the determination about whether someone meets the statutory definition of disability. *See* 20 C.F.R. § 404.1527(d)(1)-(2).

In this case, the ALJ considered Dr. Puster's opinions but gave them no weight. R. at 18. The ALJ based this assignment on a lack of "longitudinal medical evidence," Plaintiff's assistance in filling out the Diabetes Mellitus Impairment Questionnaire "based on . . .

subjective complaints," "not . . . diagnostic or clinical findings," Dr. Puster's approval for Plaintiff to drive commercially by certifying Plaintiff's Department of Transportation ("DOT") physical, and inconsistencies with "[Plaintiff]'s testimony and statements regarding his actual activity level." R. at 18. Judge Novak found the ALJ did not err in assigning Dr. Puster's opinions less than controlling weight. Judge Novak stated that "[t]he ALJ succinctly explained his reasons for assigning Dr. Puster's opinions no weight," and "[t]his assessment was supported by substantial record in the record." R&R 22. First, Judge Novak determined that the fact that Dr. Puster "required Plaintiff's 'assistance as far as symptomatology'" supported the ALJ's assertion that "'the claimant assisted in completion of Dr. Puster's assessment of limitations that does not appear to have been based on diagnostic and clinical findings but the claimant's subjective complaints.'" R&R 22 (quoting R. at 18, 567). Next, Judge Novak noted the inconsistencies between Dr. Puster's opinions and his treatment and recommendations. In particular, Judge Novak noted that Dr. Puster signed off on Plaintiff's ability to drive commercially three times and encouraged Plaintiff to reduce his weight and exercise. R&R 22-23. Finally, Judge Novak determined that the ALJ properly interpreted the medical records and was not required to seek a separate medical opinion despite the conflicting opinions in the record. R&R 25.

Plaintiff argues Judge Novak erred in three ways in his application of the treating physician rule. First, Plaintiff objects to Judge Novak's affirmation of the ALJ's assignment of no weight to Dr. Puster's opinion after finding it was based on Plaintiff's subjective opinions rather than diagnostic and clinical findings. Plaintiff argues that Dr. Puster relied on clinical and objective evidence in conjunction with subjective complaints in developing his medical opinion. Plaintiff cites a number of cases outside the Fourth Circuit to support the claim that Dr. Puster's consideration of Plaintiff's statements regarding his symptoms and limitations was good medical practice.

Plaintiff's argument fails because substantial evidence supports the ALJ's finding that Dr. Puster relied on Plaintiff's subjective opinions. As Judge Novak noted, Dr. Puster indicated

6

he filled out the Diabetes Mellitus Impairment Questionnaire "with patient's assistance as far as symptomatology." R. at 542, 567. While "a patient's report of complaints, or history, is an essential diagnostic tool," courts also consider whether the diagnosis is "well supported by medically acceptable clinical and laboratory diagnostic techniques." *See, e.g., Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Substantial evidence supports the ALJ's finding that "Dr. Puster's assessment of limitations . . . does not appear to have been based on diagnostic and clinical findings but the claimant's subjective complaints." R. at 18.

Dr. Puster made limited clinical findings that Ragsdale had numbness in both feet and slight swelling in the lower legs and feet and cited laboratory blood testing showing renal insufficiency. R. at 542–43, 576. Dr. Puster went on to make findings related to Ragsdale's ability to sit, stand/walk, lift, carry, and tolerate work stress. R. at 545–46. The findings also included Dr. Puster's opinions on the frequency Ragsdale experiences pain, fatigue or other symptoms and other limitations on Ragsdale's ability to work. R. at 546–47. The breadth of Dr. Puster's opinion is not supported by the limited clinical and laboratory findings, and therefore, substantial evidence supports the ALJ's determination that Dr. Puster relied on claimant's subjective complaints in determining Ragsdale's limitations. Further, it is important to note this determination is one of a number of reasons the ALJ provided for assigning no weight to Dr. Puster's opinions, which are also supported by substantial evidence.

Second, Plaintiff challenges Judge Novak's finding that Dr. Puster's opinions on Plaintiff's functional limitations conflicted with his notes that Plaintiff could drive commercially and that he recommended Plaintiff exercise. Plaintiff points out that, while Judge Novak referenced three instances in which Dr. Puster signed off on Plaintiff's ability to drive commercially, Dr. Puster signed the first six months prior to Plaintiff's alleged onset. Further, Plaintiff argues the fact that Dr. Puster passed Plaintiff for a physical to obtain a permit to drive commercially does not mean that he could work full time at a light exertional capacity. Plaintiff further points out the record does not include any evidence indicating that he had made any

7

post-onset attempts to work or that he was planned to do any work related to the license on a regular or sustained basis. Additionally, Plaintiff notes that, while Dr. Puster encouraged Plaintiff to exercise, Plaintiff was unable engage in any significant exercise because of his foot pain. *See* R. at 39. Plaintiff argues that even if Plaintiff had engaged in work activity for a limited period of time, "this would not preclude a finding of disability." SSR 05-2 (stating that a claimant can work up to six months and still be entitled to benefits if it is deemed an unsuccessful work attempt).

Judge Novak's recommendation was proper with respect to Dr. Puster's inconsistent treatment notes and opinions. It is well settled that "the ALJ is not required to accept the opinions of a treating physician when . . . that opinion is inconsistent with other evidence or not well-supported." *See Jarrells v. Barnhart*, 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005) (citing 20 C.F.R. §§ 404.1527(d)(3)-(4), 416.927 (d)(3)-(4)); *see also Craig*, 76 F.3d at 590. While Plaintiff may not have engaged in any sustained work following the onset date, it is indisputable that Dr. Puster found him physically able to drive commercially on more than one occasion. *See* R. at 615–16. Dr. Puster did not limit the number of hours Plaintiff was able to drive and approved Plaintiff for two years of commercial driving. R. at 616. Such a finding belies Dr. Puster's claim that Plaintiff was incapable of sustained work. Further, Dr. Puster was aware of Plaintiff's attempts to exercise, and in fact recommended that he exercise and reduce his weight in January 2010. R. at 614. Implicit in such a recommendation is an acknowledgement that Plaintiff was physically capable of exercising.

Moreover, in addition to the DOT physicals and the recommendation that Plaintiff exercise, Judge Novak also considered Dr. Puster's June 2010 letter stating Ragsdale was "incapable of sustaining full-time employment in a competitive work environment and affirming his assessment from April 2009. *See* R&R 23 (citing R. at 611). In Dr. Puster's April 2009 assessment, Dr. Puster stated that Plaintiff could sit for eight hours per day and stand/walk for one hour a day on a sustained basis during a competitive five day work week, and

that Plaintiff could occasionally lift ten to twenty pounds. R. at 545. Although in June 2010 he recommended that Plaintiff not sit continuously, Dr. Puster does not provide any evidence to support this change in opinion. *See* R. at 611. As noted by the ALJ, these physical limitations "would still have allowed [Plaintiff] to perform his past work" based on his description from his Work History Report. R. at 18[1]. Judge Novak thus correctly found the evidence does not support the extreme limitations Dr. Puster attached to Plaintiff. Collectively, the inconsistencies show that the ALJ reasonably determined that Dr. Puster's opinion was not consistent with his own treatment notes.

Finally, Plaintiff argues that the ALJ's determination of the RFC was unsupported by medical opinions on record. Plaintiff argues that Judge Novak interpreted the medical findings in ways inconsistent with the medical opinions and evidence in the record. Plaintiff alleges that, with respect to this issue, Judge Novak based his recommendation on an unpublished case from the Third Circuit, which holds no precedential value in this case. Pl.'s Obj. 4 (citing *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003)). Additionally, Plaintiff argues that courts within the Fourth Circuit have admonished ALJs for interpreting medical findings and making RFC determinations that are inconsistent with the medical opinions and evidence on the record. *See, e.g.*, *Farrar v. Astrue*, No. 3:11cv457, 2012 WL 3113159, at *10-11 (E.D. Va. July 13, 2012) (finding the ALJ erred when rejecting four different medical opinions and instead forming his own RFC based on the raw medical data).

Judge Novak correctly found the ALJ properly determined Plaintiff's RFC. While an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion," where the opinions are inconsistent, the ALJ must "evaluate the opinions and assign them respective weight to properly analyze the evidence." *Farrar*, 2012 WL 3113159, at *10 (citations omitted). An ALJ assesses the record as a whole to determine the claimants RFC.

---

[1] According to the Work History Report, in his prior employment, Plaintiff walked 3-5 hours per week, stood 3-5 hours per week, sat 30-35 hours per week, knelt for 10 minutes per week, grasped big objects for 10 minutes, and reached for 10 minutes per week. R. at 167.

9

20 C.F.R. § 404.1545(a)(3).

In the case at hand, the ALJ relied on substantial evidence in determining the RFC. While the *Mays* case is not binding, the reasoning used by the court is persuasive and relevant. In *Mays*, the court correctly noted that the "ALJ is responsible for making a residual functional capacity determination based on the medical evidence," and furthermore found the ALJ was not required to seek a separate expert medical opinion, particularly where the "evidence submitted to the ALJ was sufficient to support his conclusion." 78 F. App'x at 813; *see also* 20 C.F.R. § 404.1527(d)(1).

Here, with the respect to Plaintiff's claim, the ALJ appropriately considered Plaintiff's daily activities and the expert opinions of state agency medical consultants in determining Plaintiff's RFC. R. at 17, 18; *see also Stanley v. Barnhart*, 116 F. App'x 427, 429 (4th Cir. 2004) (determining an ALJ's opinion was supported by substantial evidence when the ALJ properly discredited medical assessments based solely on subjective reports, and found that the bulk of the evidence indicated that the plaintiff's daily activities were not affected to the extent alleged); *Mastro*, 270 F.3d at 179 (finding substantial evidence to support an ALJ's RFC based on the plaintiff's reported daily activities, prior work history, and a doctor's opinion). The ALJ considered the activities of daily living, noting the Plaintiff "drives, shops for groceries, prepares meals, cuts grass with a riding mower, socialize[s], makes household repairs, small mechanical engine repairs, woodwork[s], and he plays cards." R. at 17. Further, two non-treating state agency physicians determined Plaintiff's symptoms would not preclude him from fulltime work. *See* R&R 9. Dr. Catherine Hower determined that Plaintiff suffered from diabetes mellitus, but determined that his impairment was non-severe. R. at 554. Dr. David Williams determined that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk about six hours in an eight hour workday, sit for about six hours in an eight hour workday, and push or pull unlimitedly. R. at 588–92. Dr. Williams found that Plaintiff needed to avoid concentrated exposure to extreme cold, heat, and wetness, but found no limitations with

humidity, noise, vibrations, fumes or hazards. R. at 591. Dr. Williams also pointed out that the overall evidence suggests that Plaintiff has the ability to care for himself and maintain his home. R. at 593.

The ALJ took all of this evidence under consideration in evaluating Plaintiff's claim. While he did not adopt any one doctor's specific recommendation, the ALJ's findings are supported by the evidence contained in the record. Hence, the ALJ's opinion was supported by substantial evidence. Accordingly, Plaintiff's objection to the non-application of the treating physician rule is OVERRULED.

**II. Judge Novak properly determined the ALJ did not err in not addressing Plaintiff's obesity**

Plaintiff objects to the R&R, arguing the ALJ erred in failing to address Ragsdale's obesity when conducting the five step sequential analysis. Judge Novak found the ALJ did not err because Plaintiff did not allege that he was disabled as a result of obesity and Dr. Puster did not make such an allegation. R&R 27 (citing R. at 593, 525–34, 540–547, 565–70, 582–84, 603–07, 609–17). Rather, obesity was only identified as a medical condition twice by doctors. R&R 27 (citing R. at 211, 261). Further, the medical evidence did not discuss whether Ragsdale's obesity had an effect on his ability to work. R&R 27. Plaintiff's walking and standing limitations were explained to arise due to Plaintiff's neuropathy resulting from his diabetes and Dr. Puster rarely documented Plaintiff's weight. R&R 27–28 (citing R. at 488–93, 540, 561). Judge Novak noted it is almost impossible to consider the effects of Plaintiff's obesity if his records did not document such information, *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004), and therefore, found the ALJ did not err when not considering Ragsdale's obesity. R&R 28.

Plaintiff objects, arguing the ALJ failed to indicate if he considered Plaintiff's obesity at any of the five steps in contravention of SSR 02-1p, which states the ALJ must consider the impact of obesity at all five steps. Plaintiff cites cases from within the Fourth Circuit finding remand was necessary when the ALJ failed to consider the claimant's obesity.

Plaintiff's objections fail. Plaintiff did not allege obesity resulted in his disability, nor did his doctors make such an allegation. *See* R. at 593, 525–34, 540–547, 565–70, 582–84, 603–07, 609–17. Only twice did doctors identify Plaintiff's obesity as a medical condition, R. at 211, 261, and his weight was mentioned only in passing during the hearing before the ALJ. R. at 30, 57. Despite the ALJ's extensive questioning of Plaintiff about his limitations, Plaintiff did not mention his obesity affecting his functionality, nor were any effects of his obesity described in the medical record. Without a record of obesity and its effects, the ALJ did not err in not considering obesity during his analysis. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("We follow the Seventh Circuit and conclude that a remand is not required here because it would not affect the outcome of the case. [Plaintiff] never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments."); *Forte*, 377 F.3d at 896 ("We also reject [Plaintiff's] argument that the ALJ erred in failing to consider his obesity in assessing his RFC. Although his treating doctors noted that [Plaintiff] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions.").

The cases cited by Plaintiff in support of remand are inapposite because the cases involved well-documented obesity, unlike here. *Blackwell v. Astrue*, No. 05cv1, 2007 WL 2481341, at *4 (W.D. Va. Aug. 29, 2007) (requiring remand when the ALJ failed to consider obesity where medical records referenced obesity and its effects multiple times); *Stemple v. Astrue*, 475 F. Supp. 2d 527, 532, 540–41 (D. Md. 2007) (requiring remand when the ALJ failed to consider obesity where the plaintiff was specifically diagnosed with obesity by her treating physician). Plaintiff's medical records do not discuss Plaintiff's obesity or its effects and Plaintiff does not allege he is disabled due to his obesity; therefore, the ALJ did not err in not considering Plaintiff's obesity in making the disability decision. As Judge Novak properly noted, the dearth of information relating to the amplifying effects of Plaintiff's obesity renders such a

consideration almost impossible. Therefore, Plaintiff's obesity objection is OVERRULED.

### III. Judge Novak properly determined the ALJ did not err while assessing Plaintiff's credibility

Plaintiff objects to the R&R, alleging the ALJ erred in addressing Plaintiff's credibility. Prior to considering the fourth step of the sequential analysis, whether the claimant can perform past relevant work, the ALJ makes a determination of the claimant's RFC, which involves a determination of the claimant's impairments and credibility. *See* 20 C.F.R. §§ 416.920(e)–(f), 416.945(a)(1). It is the duty of the ALJ "to resolve conflicts in the evidence." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). In evaluating a claimant's subjective symptoms, an ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a), 416.929(a). First the ALJ must consider all of the medical evidence in the record to determine whether the claimant's underlying medically determinable physical or mental impairments reasonably could produce the individual's symptoms. *Craig*, 76 F.3d at 594–5; SSR 96-7p, at 1–3, 5 n.3. If the ALJ determines a medical impairment is reasonably likely to cause the symptoms claimed, the second step requires the ALJ to consider a claimant's statement about the intensity and persistence of impairments and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595.

The credibility determination of the ALJ is "to be given great weight," *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984), and should be assessed only to determine whether it is supported by substantial evidence. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

The ALJ in this case determined that Ragsdale's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. at 17. In completing the two-step analysis, the ALJ summarized Plaintiff's testimony regarding his symptoms, noting the Plaintiff complained of "decreased circulation in the feet, pain in the right heel and right ankle if he walks, or when he stands for prolonged periods of time, and fatigue after 10–15 minutes of vigorous physical work to the degree that it prevents sustained activity." R. at 17. Judge Novak found the ALJ did not err in assessing Plaintiff's credibility. Judge Novak noted the ALJ summarized Plaintiff's medical records and found that the complaints were not supported by the longitudinal record. R&R 26 (citing R. at 17). Judge Novak found the ALJ's assessment was supported by the fact that Plaintiff continuously requested that Dr. Puster complete a DOT physical for him, so Plaintiff could drive commercially, and requested and obtained a change in medication from insulin, so he could pass the physical. R&R 26 (citing R. at 489–90, 615–16). Additionally, Dr. Puster encouraged Plaintiff to exercise, and he did exercise. R&R 27. Plaintiff also kept busy by performing minor repairs around the house and raking leaves, went outside daily, drove, and shopped for fishing parts and household items monthly. R&R 27 (citing R. at 159–61). Finally, on many visits to Dr. Puster, Plaintiff did not have edema. R&R 27 (citing R. at 496, 565, 568, 607, 609). Based on this information, Judge Novak determined substantial evidence supported the ALJ's credibility determination.

Plaintiff objects saying the symptoms described by Plaintiff and his request to change from insulin in order to pass the DOT physical are not explicitly contradictory. Plaintiff also disputes the Magistrate's interpretation of the evidence in the record. Plaintiff states Ragsdale's attempts to exercise were short-lived and ultimately failed due to his pain, R. at 39, and that there is no evidence that Ragsdale's sporadic activities of doing minor repairs, driving,

shopping, watching TV, doing woodworking, and playing cards indicate an ability to perform sustained work on a full-time basis. Plaintiff argues that the finding of the ALJ is not supported by substantial evidence and that Ragsdale has an honorable history of working for the same company for thirty-three years and is not the picture of an individual exaggerating or who has no desire to work.

While a good work history can be evidence of a claimant's credibility, *see, e.g.*, *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983), it is not determinative. The reviewing court considers the record as a whole and must defer to the ALJ determination where reasonable minds might differ. *See Johnson*, 434 F.3d at 653, 658. Plaintiff's objections, at most, indicate reasonable minds might differ on the extent to which Ragsdale's activities undermine the credibility of his testimony regarding the intensity and persistence of his impairments. In such a case, the Court defers to the ALJ's decision.

Further, the Plaintiff's activities may be considered in determining the credibility of his testimony regarding symptoms. *See, e.g.*, *Mastro*, 270 F.3d at 179 (holding daily activities such as riding a bike, walking in the woods, and travelling undermined the symptoms alleged by the claimant); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding daily activities such as cooking, washing dishes, taking care of the house, acting as caretaker in exchange for use of his apartment, grocery shopping, and cleaning and socializing at a local poolroom undermined a finding of a psychological disability). The ALJ noted Plaintiff "drives, shops for groceries, prepares meals, cuts grass with a riding mower, socialize[s], makes household repairs, small mechanical engine repairs, woodwork[s], and he plays cards." R. at 17. These activities are more significant and vocationally related than the cases relied on by Plaintiff. *See, e.g.*, *Chapman v. Astrue*, No. 07cv2868, 2010 WL 419923, at *9 (D.S.C. Jan 29, 2010) (finding the ability to do some dishes, fold laundry, mend, and pick up around the house alternating with lying down was not inconsistent with the plaintiff's testimony); *Ausburne v. Barnhart*, No. 04cv78, 2005 WL 1862642, at *3 (W.D. Va. Aug. 1, 2005) (noting daily activities must be vocationally relevant and

finding the plaintiff's testimony credible where her "daily activities showed she was barely able to care for herself" and could not perform any chores without resting). Plaintiff's admitted activities, combined with his doctor's approval to drive commercially and encouragement to exercise, establish substantial evidence supporting the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms were not credible. Accordingly, Plaintiff's credibility objection is OVERRULED.

## IV.   Judge Novak properly determined the Appeals Council did not err in refusing to review the ALJ's decision once it received new evidence

Plaintiff's final objection alleges remand is required based on new evidence presented to the Appeals Council, which he claims creates a reasonable possibility of changing the ALJ's decision. While the Court may not consider evidence not presented to the ALJ, the Court may remand a case for reconsideration under two circumstances. *See* 42 U.S.C. § 405(g). Under a "sentence four" remand, the Court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* If new evidence was submitted, the case must be remanded to the ALJ if the evidence is new and material. *Wilkins v. Sec'y Dept. Health & Human Servs.*, 953 F.2d 93, 96 n.3 (4th Cir. 1991). Under a "sentence six" remand, the Court may remand a case to the Commissioner upon a showing of new and material evidence if there is good cause shown by the Commissioner for the failure to incorporate this evidence into the record in a prior proceeding. *Id.*; *Cameron v. Astrue*, No. 7:10CV00058, 2011 WL 2945817, at *7 (W.D. Va. July 21, 2011). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d at 96.

Plaintiff provided the Appeals Council with a new opinion by examining physician, Dr. Lee. Dr. Lee opined that Plaintiff could only sit or stand for 0–1 hours in an eight hour day. R. at 623. Judge Novak found the Appeals Council did not err in refusing to review the ALJ's decision in light of Dr. Lee's opinion because the new evidence is not material. R&R 29. Judge Novak

found Dr. Lee's opinion "contained information about Plaintiff that was substantially inconsistent with the medical records." R&R 29. Specifically, Dr. Lee wrote that Plaintiff took insulin by injection and that the side effects from insulin included hypoglycemia, sweating, shaking, and memory deficit. R&R 29 (citing R. at 622). Plaintiff, however, stopped taking insulin and began taking Glucophage XR in April of 2008 in order to qualify for commercial driving. R&R 29 (citing R. at 489). Judge Novak accordingly found Dr. Lee's opinion was not supported by substantial evidence in the record and contradicted other evidence in the record, and therefore, was not material and did not warrant remand. R&R 30.

Plaintiff objects, arguing Dr. Lee's opinions are material because they provide confirmation for the findings of Dr. Puster, treating physician, and Dr. Wax, examining podiatrist, and further call into question the ALJ's RFC finding. Plaintiff contends the relevant inquiry to determine materiality is whether Dr. Lee's opinions differ from the limitations found by the ALJ and that a finding of greater limitations does not mean the opinion is invalid or unsupported. Plaintiff further contends that Dr. Lee's statement that Plaintiff took insulin by injection is not a material inconsistency.

Judge Novak properly found Dr. Lee's opinion is not material and does not warrant remand. There is not a reasonable possibility that Dr. Lee's opinion would change the ALJ's decision. Dr. Lee's opinion is not entitled to controlling weight because it is unclear what treatment relationship he had with Plaintiff (Dr. Lee said he treated Plaintiff every one to two months since 1998, but Plaintiff does not identify Dr. Lee as one of his doctors, R. at 183–85, 190, 620) and his opinion is not accompanied by treatment notes to support his opinion. *See* 20 C.F.R. § 404.1527(c)(3) (providing for greater weight where a medical opinion is supported by relevant evidence, particularly medical signs and laboratory findings). Further, Dr. Lee's findings are inconsistent with the record. *See id.* § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Dr. Lee's 2010 opinion indicated Plaintiff took insulin by injection and experienced

side effects such as hypoglycemia, sweating, and shaking. R. at 622. Dr. Puster however indicated Plaintiff stopped taking insulin in April of 2008, R. at 489, and experienced no side effects when taking insulin. R. at 544.

Dr. Lee's opinion is also inconsistent with Plaintiff's testimony. Dr. Lee indicated that Plaintiff could only sit for 0–1 hour in an eight hour work day. R. at 623. Plaintiff testified that he had no problems sitting and he could sit for about an hour and then would walk around for five or ten minutes before sitting again. R. at 35, 43–44. Dr. Lee also stated that Plaintiff was unable to lift for than five pounds with his right hand and twenty pounds with his left hand and could not carry more than five pounds. R. at 623. Plaintiff, however, testified he could lift and carry ten to fifteen pounds. R. at 35. Based on the questionable treatment relationship and the inconsistencies between Dr. Lee's opinion and the remainder of the record, his opinion would not be given any great weight, and therefore would not reasonably have changed the ALJ's decision. Plaintiff's objection is accordingly OVERRULED.

## CONCLUSION

For the reasons stated above, the Court will OVERRULE Ragsdale's objections and ADOPT Judge Novak's R&R, which DENIES Ragsdale's Motion for Summary Judgment or Remand (ECF Nos. 7 & 8); GRANTS the Commissioner's Motion for Summary Judgment (ECF No. 10); and AFFIRMS the Commissioner's decision denying benefits to Ragsdale.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

                /s/
James R. Spencer
United States District Judge

ENTERED this   28th   day of February 2013.